# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION**

| | |
|---|---|
| JIMMY EDWARDS, ROBERT HUNT, DOLORES HUNT, CLIFFORD MCKELLAR, JR., and EMMA MCKELLAR, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>*v.*<br><br>CSX Transportation, Inc.,<br><br>Defendant. | Case No. 7:18-cv-169-BO<br><br>CHIEF JUDGE BOYLE<br><br>*Consolidated with Cases No. 7:18-cv-177-BO and No. 7:18-cv-178-BO* |
| ANTOINETTE MOORE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>*v.*<br><br>CSX Transportation, Inc.,<br><br>Defendant. | Case No. 7:18-cv-177-BO |
| WEST LUMBERTON BAPTIST CHURCH, CURRIE CHAINSAW, INC., C.J.M. VENTURES, INC., WILLIAM LOCKLEAR d/b/a/ STRICKLAND'S BARBERSHOP, TBL ENVIRONMENTAL LABORATORY, INC., SAMMY'S AUTO SALES, INC., LINDA SAMPSON, and ERIC CHAVIS, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>*v.*<br><br>CSX TRANSPORTATION, INC.,<br><br>Defendant. | Case No. 7:18-cv-178-BO |

**STIPULATION AND [PROPOSED] ESI CASE MANAGEMENT ORDER**

1

Pursuant to Fed. R. Civ. P. 16 and Fed. R. Civ. P. 26(f), the Court adopts and enters as an Order the parties' Stipulation and [Proposed] ESI Case Management Order.

## A.  COOPERATION AND RESOLUTION OF DISPUTES

1.  The Parties acknowledge that all litigants in this Court, and all lawyers, are always bound by a duty of good faith towards one another, and toward the Court. The Parties agree that it is always preferable to seek mutual resolution of issues that may arise in discovery, rather than resorting to motion practice, letter wars, or other time-wasting procedures. The Parties agree that, as much as is reasonably possible, they will seek to resolve matters by telephone and by agreement before engaging in other means.

2.  The Parties agree that no stipulated Order could ever anticipate all contingencies. The Parties will remain agreeable to revisiting this Order as necessary.

3.  No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties and complied with all applicable Local Rules.

## B.  PURPOSE AND SCOPE

1.  **General.** Except as otherwise set forth below, all responsive and non-privileged documents that originated in hard copy or electronic format shall be produced, subject to objections and responses, in the manner provided herein. Any documents or ESI that present imaging or formatting problems shall be identified as soon as reasonably possible and the Parties shall meet and confer to attempt to resolve such problems. The Parties shall meet and confer on the delivery of document productions, and each Party shall bear its own costs of production.

2.  **Scope.** Nothing in this Order is intended to be an exhaustive list of discovery obligations or rights of any Party or non-Party. To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules of Civil Procedure, local rules, applicable

state and federal statutes, or subsequent Orders in this proceeding, those obligations or rights will control. Nothing in this Order establishes any agreement regarding the subject matter or scope of discovery in this litigation, or the relevance, authenticity or admissibility of any data.

**3.** **Limitations and Non-Waiver**. Nothing in this Order shall be interpreted to require production of data protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable protection or privilege. Nothing herein shall contradict the Parties' rights and obligations with respect to any privilege. The Parties incorporate the provisions in the forthcoming Stipulated [Proposed] Protective Order, which will be negotiated by the Parties and submitted to the Court.

**4.** **Variations.** If any Party identifies a circumstance where application of this Order is unreasonable, unduly burdensome or costly, disproportionate, or not technologically feasible, the Party will disclose to all other Parties the reason(s) for, and circumstances surrounding, the need to vary from this Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order within one week of the issue being discovered by a Party. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

**C.** **ESI PRODUCTION FORMAT**

**1.** **Image File Format**

Except for the types of documents identified in Paragraphs (C)(2)-(3) below, a producing Party may produce ESI (i) in its native file format (see Paragraph (3) below) and/or (ii) a reasonably useable format, subject to the following specifications:

3

a.        Single-page, black-and-white, 300 DPI, 1-bit Group IV TIFF images shall be provided for each page of each document, with each image file named after the production number of that page, with extension ".tif"

b.        To the extent reasonably possible, the imaged data shall retain all attributes of the native or hard-copy file, such as document breaks and original document orientation (i.e. portrait to portrait and landscape to landscape). The following formatting will be applied:

i.        Word processing documents with redactions will be processed to TIFF format and imaged showing track changes or edits, comments, notes and other similar information; and

ii.        Spreadsheet files requiring redactions may be produced as an image with all worksheets, fields, and rows unhidden, fully expanded and printed over and then down if the width is wider than one sheet. Plaintiffs reserve the right to request a native copy of redacted spreadsheets.; and

iii.        Non-redacted presentation files (e.g. Microsoft PowerPoint) will be processed in native format. The Native File (defined herein) will be named as the first Bates number of the respective document. The corresponding load file shall include native file link information for each native file that is produced. Native PowerPoint presentations that require redactions shall be produced as TIFF images, which shall include speaker notes and "hidden" slides as extracted by the software used to process the documents. If the PowerPoint or slide program contains video or audio components, the video or audio will be produced as native files with the appropriate attachment relationships.

c.        Embedded ESI documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related

Case 7:18-cv-00169-BO   Document 84-1   Filed 03/29/21   Page 5 of 26

back to the respective top-level parent document (*e.g.*, standalone file, email message, etc.) via the BegAttach field referenced in Appendix 2. Related documents will be produced within a continuous Bates range.

      d.    To the extent a document is not already unitized, the Parties shall undertake reasonable efforts, if a document consists of more than one page, to unitize the document and any attachment(s) as in their original form when creating the image files. The Parties shall also undertake reasonable efforts to ensure that distinct documents are not merged into a single record and that single documents are not split into multiple records.

      e.    Text files shall be produced as one file per document, named after the starting production number assigned to the document and ending with extension ".txt", with a text directory for each production volume, and with a relative file path to the text file provided in the related database load file.

      f.    With the exception of TIFF, PDF and other image file types for which the text cannot be extracted, the text of documents should be extracted directly from the Native File without using Optical Character Recognition ("OCR"), except in the case of redacted documents, as specified in Paragraph 3(c) and 3(d), below. Documents produced in redacted form should not have text files populated with extracted text but should instead have text files populated with OCR data which will not contain the redacted data. If a document does not contain extractable text, the producing Party shall provide OCR files for that document to the extent possible.

      g.    Data containing color will be produced in color.

      h.    With respect to a Party's TIFF production, electronic documents attached to an email or electronic document and hard-copy documents attached or appended to a hard copy document, are to be produced contemporaneously and sequentially immediately after the parent

document. Parent-child relationships within a document family (the association between an attachment and its parent document) shall be preserved. Each document shall be produced with the production number for the first and last page of that document in the "BegDoc" and "EndDoc" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

   i. Except as specified in Paragraph 3(c) below, each of the metadata and coding fields set forth in Appendix 2 that are reasonably available shall be produced for that document. Fields that are not populated shall be left with null values and not populated with fillers or spaces. All metadata pertaining to dates and times will be standardized to Greenwich Mean Time (GMT).

   j. Production numbers shall be branded to the lower right-hand corner of TIFF images and confidentiality designations (if applicable) shall be electronically branded or burned to the lower left-hand corner of TIFF images so that they legibly print with the images. A transmittal cover letter should accompany each production that includes the production volume name(s), bate(s) ranges, custodians and associated document count, total number of records included in the production(s), total number of image, text and native files as well as the encryption method/software (do not include password in transmittal letter). If one or more production numbers is skipped in a production, the producing Party will so note in a cover letter accompanying the production or in a privilege log. The Parties shall use reasonable efforts to ensure that production numbers: (1) are unique and consistent across the entire production, provided, however, that Parties may use multiple prefixes to reflect productions from separate entities or related to specific experts; (2) maintain a constant prefix and page length (0-padded) across the production, consistent with the requirements of sub-paragraph (1); (3) contain a prefix that clearly identifies the producing

6

Party; (4) contain no special characters or embedded spaces; and (5) are sequential within a given document. Attachments will immediately follow the production number(s) for the parent document. Production number prefixes shall be consistent across all documents a Party produces in the litigation. For replacement documents, append "-R" to the bates number.

k. Each Party shall also produce accompanying image load/unitization files and delimited text files as described below in Appendix 1. Parties are encouraged to work in cooperation with one another and each other's respective vendors in exchanging sample load files. If this exchange occurs, the requesting Party will have fourteen (14) days to respond with load file change requests. Nothing in this Order will limit the Parties from discussing load file changes throughout the course of the litigation.

l. If any party produces a TIFF file that is unreadable, the parties will work together to resolve the matter so that the requesting party can read the information.

## 2. Non-Convertible Files

Certain types of files such as system, program, proprietary files, audio files, and video files may not be amenable to conversion into TIFF format. Such files will not be converted into TIFF format. To the extent that the Parties have not excluded these files from production elsewhere in this Order, these files will be produced in their native format in accordance with Paragraph (B)(3) below. Examples of file types that are or may not be conducive to conversion into TIFF format include, but are not limited to:

```
*.exp *.ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.mov *.mp3 *.swf
*.psp *.cdi *.chi *.chm *.com *.dll *.exe *.hlp *.ivi *.ivt *.ix *.msi *.nls *.obj
*.ocx *.rmi *.sys *.tmp *.ttf *.vbx *.wav *.wpg *.iso *.pdb *.eps *.mpeg *.mpg
*.ram *.rm *.psd *.ai *.aif *.bin *.hqx *.snd *.mpe *.wmv *.wma *.xfd *.db *.bat
*.xnk *.qtl *.kob *.mso *.dat *.m4a *.bak *.xll *.blank *.wdf *.cdo *.snp *.rename
*.mdi *.sda *.ren *.001 *.crf *.dtf *.eds *.ex1 *.fdf *.pcl *.wmf *.wps *.fpage
*.odttf *.cas *.ldl *.wm *.m4p *.dcx *.3g2 *.sss *.xyz
```

The Parties agree to meet and confer about relevant file types that cannot be converted to TIFF so as to discuss production options, including, but not limited to a discussion of how such files could be viewed.

In addition, certain file types may exist in a document collection that contain no useful or relevant information/detail (these files are usually captioned as "exception files") to the litigation such as .ATT001, files approaching "0" KB file size, thumbs.db, certain .htm and .tmp file types. The Parties agree that such files need not be identified or produced.

There are other forms of ESI which may also not be producible in native format and for which there is no standard means of production in TIFF format. This may include: Microsoft Teams; Slack; other collaboration platforms; cell phone records; text and MMS messages; iMessages and other instant messengers. To the extent the Parties agree that such sources are appropriate for discovery, subject to considerations of relevance, burden and proportionality, the Parties will make reasonable efforts to search for this information and, if responsive non-privileged information is located, and will confer on a reasonable means for the production of this ESI.

**3. Native Files**

In addition to the types of data listed in Paragraphs (C)(1) and (2), a producing Party will produce certain additional types of ESI in its native format ("Native Files"), subject to the following specifications:

      a.      Word processing files, such as Microsoft Word files.

      b.      Spreadsheets, such as Microsoft Excel files, .CSV files and other similar spreadsheet files.

      c.      Presentations, such as PowerPoint.

      d.      Images and photographs (PNG, JPEG, etc.).

These are the specifications for the production of Native Files:

- To the greatest extent possible, fidelity from the original Native File should be preserved.

- The file shall be renamed in the following format: Bates Prefix-Bates Number-Confidentiality Designation. Except as specified in Paragraph (3)(d) below, each of the metadata and coding fields set forth in Appendix 2 that reasonably can be extracted from an electronic document shall be produced for that document. Fields that are not populated shall be left with null values and not populated with fillers or spaces.

- Each native file will be assigned a unique production number within the litigation database.

- The producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced), and must produce the file itself in native format. The placeholder will be branded with the production number in the lower right-hand corner, the original filename of the native file, and the phrase "PRODUCED IN NATIVE" branded in the center of the page. The producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

- **Handling privilege and redaction issues:** If a file that would otherwise be produced in native format contains information subject to a claim of privilege or any other applicable protection that requires redaction, the producing Party shall convert that file to TIFF format and produce it with the necessary redactions. The party need *not* produce the native file. If the party produces OCR text, it should reflect the redactions. All such OCR text will be Unicode-compliant (UTF-8) to the extent practical. If such conversion is unduly burdensome or renders the document unusable, the producing Party may produce the document in any reasonably usable form as may be agreed upon by the respective Parties.

9

- **Noting redactions:** The portion of the redacted text shall be clearly identified on the face of the TIFF image, either by masking the redacted content with electronic highlighting in black or through the use of redaction boxes. The label "Redacted" shall appear on the face of the redacted portion of the TIFF image. If Personally Identifiable Information ("PII"), such as social security numbers are redacted, the label "Redacted – PII" shall appear on the face of the redacted portion. If information is redacted on the basis of the attorney-client privilege or the work product doctrine, the basis for the redaction shall appear on the face of the redacted document. Redactions for privilege and work product, including whether such redactions must be included on a privilege log, are discussed in more detail in Section F below. The redacted TIFF image shall be produced in accordance with the image load file specifications in Appendix 1, and any other provisions for the production of TIFF images contained herein. Redacted text shall not be included in the text file for that redacted TIFF image. The original unredacted Native File shall be preserved pending conclusion of this litigation.

- **Passwords:** The Parties will make reasonable efforts to remove passwords or other security protection from any Native File prior to production. If the security protection cannot be removed from a Native File after reasonable efforts by the producing Party, a placeholder TIFF image may be produced in place of the Native File indicating that security protection could not be removed from the data, and the party must produce the document in TIFF format. Upon request from the requesting Party, the Parties shall meet and confer in good faith regarding the reasonable efforts or mechanisms made to remove the security protection from the Native File or the production of the available metadata listed in Appendix 2 from the file.

- **Use of native files:** If a Native File is used at a deposition or hearing in this litigation, or attached to a motion or other filing, it shall be accompanied by its production number-stamped placeholder TIFF image in order to facilitate tracking and authentication thereof. The Parties may, but are not required to, further mark fixed images of Native Files with additional numbering for ease of identification at a deposition or hearing.

## 4. Duplicates

To reduce the unnecessary costs of reviewing and producing duplicate documents, each Party will make reasonable efforts to remove duplicate data prior to producing documents. Data will be de-duplicated vertically within each custodian and horizontally across custodians (*e.g.*, globally) following industry standard de-duplication algorithms. De-duplication will be performed using MD5Hash or SHA-1 hash value.

For non-e-mail data, if duplicates are removed prior to producing documents, the ALL_CUSTODIANS and ALL_FILE_PATHS fields will be populated with all of the custodians who had a copy of the document in their files along with where the file was located where that information is available. In the event of rolling productions of non-email data, the parties will either produce ALL_CUSTODIANS and ALL_FILE_PATHS fields on an ongoing basis in a metadata overlay file or subsequently collected documents identified as duplicates to documents produced in previous productions will be produced again. For e-mail data, the producing Party will include information in the following fields: e-mail from, e-mail to, e-mail cc, e-mail bcc, and e-mail subject.

In order to reduce the volume of entirely duplicative content within email threads, the Parties may but are not required to use email thread suppression but shall disclose that they have used email thread suppression. If email thread suppression is used, the most inclusive thread will

be produced to maintain a complete family.  Any change to the thread, including but not limited to, addition or removal of recipients, changes to body text, change in subject header, change in message metadata such as Importance, or the addition of an attachment, will be considered a new thread and will be produced as a unique thread.

## 5.    Production of Data from Databases and Other Formats

a.      If a producing Party identifies a particular source or type of responsive data for which it reasonably believes that application of this Order would be unduly burdensome or impractical, the Party identifying the source or type of responsive data shall promptly notify the requesting Party, explaining in detail the type and source of the data at issue, and the reason(s) why the Party believes that application of this Order would be unduly burdensome or impractical, and proposing reasonable modifications of this Order with respect to that source or type of responsive data. Thereafter, the Parties shall meet and confer within fourteen (14) calendar days to determine if modification of the Order with respect to the data at issue is appropriate.

b.      If a response to discovery requires production of ESI contained in a database or comprehensive electronic accounting system, the producing Party shall meet and confer with the requesting Party concerning a reasonable method of production. To the extent reasonably available, the producing Party shall also provide any data dictionary, key, or other information sufficient to provide a reasonable understanding of the contents of the database or accounting system.

## 6.    Time Zone

Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value and do not automatically populate, and all metadata pertaining to dates and times will be standardized to Greenwich Mean Time (GMT). The Parties understand and acknowledge

that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hard-coded text within a file.

7.    **File Transfers - Encryption.**

All data transfers need to be done with some sort of Encryption (secure FTP or other mode of encryption such as password protected .ZIP, .RAR files or hard drives that require keypad decryption on a device level).

8.    **Archive File Types.**

Archive file types (e.g., .zip, .rar) shall be uncompressed for processing. Each file contained within an archive file shall be reviewed, and if responsive and not privileged, produced. If the archive file is itself an attachment to a responsive, non-privileged document, the parent-child relationship shall be preserved and all files in archived file shall be produced, subject to privilege or other protections.

9.    **System Files to be Removed.**

Electronic file collection will be "De-NISTed," removing commercially available operating system and application files contained on the National Institute of Standards and Technology ("NIST") file list.  Identification of NIST list matches will be through MD5 Hash values.

10.   **Microsoft "Auto" Feature**

To the extent reasonable and technologically possible for a producing Party's vendor, (a) Microsoft Excel and PowerPoint documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in

the ordinary course of business; and (b) if "auto date," "auto file name," "auto file path," or similar features are identified, the produced document would note the "auto" feature present.

**D.     SEARCH TERMS AND TAR**

The Parties agree to exchange any search terms, custodians, and timeframes (and any other similar techniques) to be employed to locate potentially responsive ESI at the onset of ESI discovery.

To the extent any Party intends to use technology-assisted review (TAR) to identify potentially responsive documents for production, it will notify the other Party and agree to meet and confer regarding such use.

**E.     HARD COPY DOCUMENT PRODUCTION FORMAT**

**1.**     The Parties agree that, with respect to documents that exist in hard copy format ("Hard Copy Materials"), a producing Party will image and produce such documents as TIFF images and OCR text in accordance with the specifications delineated in Section B, above. Load files for such productions shall include data relevant to the individual documents, including Bates numbering, custodian, OCR and folder labels and box labels that have been manually recorded. The parties have agreed that, along with images of paper documents, identifying matter such as file jackets, binders and their covers, post-it notes, box names and box indexes, and other matter will be preserved and produced, so that it is possible to tell where paper documents originated and were maintained.  In particular, the concern being addressed here is "ancient documents" more than 20 years old.

**2.**     To the extent responsive Hard Copy Materials are included in a large compilation of documents that is compiled solely for the purposes of storage convenience and not for any purposes related to the litigation and contains irrelevant, non-responsive Hard Copy Materials,

14

the producing Party may produce responsive, non-privileged Hard Copy Materials without also producing non-responsive Hard Copy Materials.

      **3.**      If a producing Party reasonably believes that production of Hard Copy Materials as imaged files pursuant to this Section C is unduly burdensome, the producing Party shall seek to meet and confer in good faith with the requesting Party regarding content, volume, and related issues before any production of Hard Copy Materials.

      **4.**      The Parties retain their right to review Hard Copy Materials in their original form, *i.e.*, the actual paper, upon good cause shown.

**F.**      **PRIVILEGE LOGS**

      **1.**      To the extent that a document is withheld from production on the basis of any privilege or protection, the producing Party shall produce a privilege log of withheld documents within 15 business days of the date after the documents were otherwise due.

      **2.**      Prior to generation of a privilege log, the Parties shall meet and confer in a good faith effort to reach agreement on the manner in which a privilege log will be generated and the contents of such a log.

**G.**      **OBJECTIONS PRESERVED**

      Nothing in this Order shall be interpreted to require disclosure of relevant information or data that is protected by the attorney-client privilege, common interest privilege, work-product doctrine, or is prohibited from disclosure under any similar law, regulation, rule, court order, or any other applicable privilege or protection. The Parties do not waive any objections to the production, discoverability, or confidentiality of ESI, Hard Copy Materials or any other discovery materials, including, without limitation, objections regarding the burden, overbreadth or relevance of document requests related to ESI, Hard Copy Materials or any other discovery materials, or relating to the production of ESI or Hard Copy Materials in a form specified in this Order.

15

The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

DATED: March 29, 2021

/s/ *Henry L. Kitchin*
Henry L. Kitchin, Jr.
N.C. State Bar No. 23226
**MCGUIRE WOODS LLP**
Post Office Box 599
Wilmington, North Carolina 28402
Telephone: (910) 254-3800
hkitchin@mcguirewoods.com

April N. Ross
N.C. State Bar No. 35478
Scott L. Winkelman
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 624-2500
aross@crowell.com
swinkelman@crowell.com

*Counsel for CSX Transportation, Inc.*

/s/ *Matthew E. Lee*
Matthew E. Lee
N.C. State Bar No. 35405
Jeremy R Williams
N.C. State Bar No. 48162
**WHITFIELD BRYSON LLP**
900 West Morgan St.
Raleigh, North Carolina 27603
Telephone: 919-600-5000
matt@whitfieldbryson.com
jeremy@whitfieldbryson.com

Adam Edwards
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
adam@gregcolemanlaw.com

William F. Cash III
**LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR & MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7059
bcash@levinlaw.com

*Counsel for Jimmy Edwards, Robert Hunt,
Dolores Hunt, Clifford McKellar, Jr., and
Emma McKellar*

/s/ *Theodore J. Leopold*
Theodore J. Leopold
Leslie Mitchell Kroeger
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
11780 US Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
tleopold@cohenmilstein.com
lkroeger@cohenmilstein.com

*Counsel for West Lumberton Baptist Church,
Currie Chain Saw, Inc., C.J.M. Ventures,
Inc., William Locklear d/b/a Strickland's
Barbershop, TBL, Environmental Laboratory,
Inc., Sammy's Auto Sales, Inc., Linda
Sampson and Eric Chavis*

/s/ *Mark R. Sigmon*
Mark R. Sigmon
N.C. State Bar No. 37762
**SIGMON LAW, PLLC**
5 West Hargett Street, Suite 1001
Raleigh, NC 27601
Telephone: (919) 451-6311
mark@sigmonlawfirm.com

*Counsel for Antoinette Moore*


**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**


DATED this _____ day of March, 2021,

BY THE COURT:


_____

TERRENCE W. BOYLE

United States District Judge

18

## **APPENDIX 1: Load File Formats**

**A.    IMAGE LOAD FILES**

- ESI will be produced in Concordance load file format. Upon request and demonstration of need, the Parties will meet and confer to discuss production in an alternative load file format or to produce without load files.

- Every document referenced in a production image load file shall have all corresponding images, text, and data. Redacted text shall not be included in a redacted document's text file.

- The name of the image load files shall mirror the name of the delivery volume, and should have an .opt or .log file extension (*e.g.*, ABC001.OPT or ABC001.LOG).

- The volume names shall be consecutive (*i.e.*, ABC001, ABC002, et. seq.).

- Every image in the delivery volume shall be contained in the image load file.

- Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); instead, a separate volume shall be created for each piece of media delivered.

- Each image load file shall be produced in a standard litigation support image load format (*e.g.*, .opt or .log) providing:

  a.    The document number for each image;

  b.    The relative path name(s) of each TIFF image file; and

  c.    The document boundaries for each document.

- The load file shall be in the order that appropriately corresponds with each image file.

- The following represents an example of the format of a standard .opt or .log image load/unitization file:

19

Bates,Volume,PATH_to_image,Document Break,Folder Break, Box Break, Total_Pages.

```
M_0100000,06150101,.\06150101\0000\000l.TIF,Y,,,1
M_0100001,06150101,.\06150101\0002.TIF,Y,,,l
M_0100002,06150101,.\06150101\0000\0003.TIF,Y,,,1
M_0100003,06150101,.\06150l01\0000\0004.TIF,Y,,,2
M_0100004,0615010l,.\06150101\0000\0005.TIF,,,,
M_0100005,06150101,.\06l50l01\0000\0006.TIF,Y,,,1
M_0100006,06150101,.\06150101\0000\0007.TIF,Y,,,4
M_0100007,06150101,.\06150101\0000\0008.TIF,,,,,
M_0100008,06150l01,.\0615010l\0000\0009.TIF,,,,,
M_0100009,06150101,.\06150101\0000\0010.TIF,,,,,
```

**B.      METADATA LOAD FILES**

- The metadata load file shall use the following delimiters:

    o        Field Delimiter: ¶ (ASCII 020)

    o        Text Qualifier: þ (ASCII 254)

    o        Multi-value Delimiter: ; (ASCII 059)

    o        New line: ® (ASCII 174)

- Metadata fields that are not applicable to a document or are NULL shall be left with null values and not populated with fillers or spaces.

- All date and time fields shall be produced in "mm/dd/yyyy hh:mm" format.

- Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); instead, a separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat or .txt extension (*i.e.*, ABC001.DAT or ABC001.TXT).

- The volume names shall be consecutive (*i.e.*, ABC001, ABC002, *et. seq*.).

- Furthermore, .dat or .txt files must be encoded in ASCII or ANSI:UTF encodings.

20

• The metadata fields listed in Appendix 2 (as pertain to particular categories of documents pursuant to this Order) shall be included in the delimited database load files, to the extent such metadata is already in existence and reasonably accessible. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this Order shall require any Party to extract, capture, collect or produce such metadata. Any Party that intends to withhold existing metadata listed in Appendix 2 on the basis that it is not reasonably accessible or available or would be unduly burdensome to collect shall promptly inform the requesting Party and meet and confer. The Parties will reasonably endeavor to confirm the accuracy of the metadata extraction process and expressly reserve their rights to object to the use of metadata for any reason or purpose. To the extent that the metadata listed in Appendix 2 relating to any ESI contains information subject to a claim of privilege or any other applicable protection, that metadata may be redacted or withheld, as appropriate, and the producing Party shall include information regarding the basis and justification for withholding or redacting such information in its privilege log.

## Appendix 2: ESI Metadata and Coding Fields

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegDoc | Production number of the first page of the document. | E-mail, E-doc, or Paper as appropriate | Prefix-0000000001 |
| EndDoc | Production number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Production number of the first page of the first document of the document family. | E-mail, E-doc | Prefix-0000000001 |
| EndAttach | Production number of the last page of the last document of the document family. | E-mail, E-doc | Prefix-0000000004 |
| AttachCount | The number of attachments to a document. | E-mail, E-doc | 3 |
| FileType | The record type of a document. | All | Paper, Email, E-Attachment, Standalone Electronic Document |
| All_Custodians | Additional custodians who had a copy of the document prior to de-duplication, including duplicate custodians. | Non E-mails (where custodial information is available) | |
| ALL_FILE_PATHS | The location of each file, for duplicate custodians, prior to de-duplication. | All[1] | |
| CUSTODIAN | Name of custodian associated to original produced file (Last Name, First Name format) Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions. For instance: Smith, John A. and Smith, John B. | All | Smith, John |

[1] Proprietary or confidential information contained in the "ALL_FILE_PATHS" metadata field will be designated as "ATTORNEYS EYES ONLY" pursuant to the parties' forthcoming protective order.

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| To | All recipients that were included on the "To" line of the e-mail. | E-mails | larry.murphy@email.com |
| File_Path | The directory structure of the original file(s). If a file is inside of a container, the container name is included in the path. | All[2] | \ C:\Documents and Settings\jsmith\My Documents\CLE material\SearchTerm Anal ysisReport.pdf |
| From | The name and e-mail address sender of the e-mail. | E-mails | Bart.Cole@email com |
| CC | All recipients that were included on the "CC" line of the e-mail. | E-mails | sstephens44@email.com |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | ceo-gs@email.com |
| DateRcvd | Date and time an e-mail was received (GMT). | E-mails | mm/dd/yyyy hh:mm |
| DateCreated | The date and time an e-mail or e-file was created (GMT). | E-mails, E-attachments and electronic documents | mm/dd/yyyy hh:mm |
| DateLastModified | Date and time the document was last modified (GMT). | E-attachments; Electronic documents | mm/dd/yyyy hh:mm |
| LastSavedBy | Value shows within the "last saved" metadata field. | E-mails, E-attachments and electronic documents | |
| Cal_Start | Start date and time of calendar or appointment (GMT). | E-mails, E-attachments and electronic documents | |
| Hash | MD5 and/or SHA-1 or other algorithm type or "de-duplication key". | All | Hash Value |

[2] Proprietary or confidential information contained in the "File_Path" metadata field will be designated as "ATTORNEYS EYES ONLY" pursuant to the parties' forthcoming protective order.

23

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| FileName | The file name of the document, including file extension | E-attachments; Electronic documents | |
| Author | Author of document | E-attachments and electronic documents | |
| Subject | Document subject line of an e-mail | E-mails | |
| Orig_File_Name | The original file name of an electronic document or an attachment to an Email (to the extent different from FileName). | E-attachments and electronic documents | |
| File_Ext | The file extension of a document. | All | Doc, nsf, rtf, pdf, msg, xls, etc. |
| File_Size | The file size of a document (including embedded attachments). | All | |
| NativeFilePath | The path to the corresponding native file included with a production volume. | E-attachments and Electronic documents produced in native format | |
| TEXTPATH | The relative path to the corresponding OCR or extracted text file included with a production volume. | All | |
| Confidentiality Designation | The designated level of confidentiality pursuant to the Parties' forthcoming Stipulated [Proposed] Protective Order. | All | CONFIDENTIAL |
| REDACTED | Whether any redactions were applied. | All | Y/N |
| PAGE_COUNT | The number of pages. | All | |
| E-MAIL_IMPORTANCE | Whether an e-mail was marked with "high importance." | E-mails | Y/N |
| REPLACEMENT | Whether a document is a replacement to another document previously produced. | All | Y/N |
| CATEGORIES | Category field value pulled from metadata of the native file. | All | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| COMMENTS | Comments field value pulled from the metadata of the native file. | All | |
| HAS_COMMENTS | Microsoft Word, Excel, or PowerPoint document contains comments. | MS docs | Y/N |
| HAS_TRACK_CHANGES | Microsoft Word or Excel document contains tracked changes. | MS docs | Y/N |
| HIDDEN_TEXT | Document has hidden text. | All | Y/N |
| KEYWORDS | Keywords extracted from the metadata of the native file. | All | |
| SUSPECT_OLE | Document contains embedded files. | All | Y/N |